UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

THE CITY OF HOLLAND, acting by and
through its BOARD OF PUBLIC WORKS,

                           Plaintiff,

            - against -

INDIAN HARBOR INSURANCE CO. and
XL AMERICA, INC.,

                           Defendants.

Case No. 1:11-cv-1199

HON.

**COMPLAINT**

**With Demand for Jury Trial**

Plaintiff, the City of Holland, acting through its Board of Public Works

("BPW"), by its attorneys, states and alleges for its Complaint against Defendants XL

America, Inc. ("XL") and XL affiliate, Indian Harbor Insurance Company ("Indian

Harbor") (collectively "Defendants") as follows:

**Nature of the Action**

1.      This action arises out of Defendants' wrongful refusal to defend the

BPW against the action styled in *Sierra Club v. City of Holland, Michigan and Holland

Board of Public Works*, No. 1:08-cv-1183 (filed Dec. 15, 2008) ("Sierra Club Action")

pursuant to the terms of Pollution and Remediation Legal Liability Policy, Number

PEC000396608 ("Policy"), which Defendants agreed to insure the BPW.

2.      As a direct result of Defendants' wrongful breach of the Policy, the

BPW has been forced to pay for its own defense expenses in the Sierra Club Action,

without the benefit of the insurance coverage and related services purchased from

Defendants.  Accordingly, the BPW seeks, among other things, damages from Defendants for breach of their duty to defend in the form of immediate reimbursement of fees and costs incurred to date to defend the Sierra Club Action.  In addition, the BPW seeks declaratory relief that Defendants have a duty to defend the BPW in the Sierra Club Action going forward, including a duty to reimburse defense expenses as incurred, and that Defendants have a duty to indemnify the BPW for any liability assessed therein.

### The Parties

3.      Plaintiff, the City of Holland, acting by and through its Board of Public Works, is a municipal corporation existing in Ottawa and Allegan Counties and organized under the laws of the State of Michigan.  The BPW operates the James DeYoung Coal-Fired Power Generation Station ("DeYoung Plant")—which generates and distributes electricity for the City of Holland and surrounding areas by utilizing various fuels, including coal to drive steam turbines—at issue in the Sierra Club Action.

4.      Upon information and belief, Defendant XL America, Inc. is a corporation, organized under the laws of the State of Delaware, whose principal place of business is in the State of Connecticut.  Upon information and belief, XL is the parent company of Indian Harbor Insurance Company.  Upon information and belief, XL regularly conducts business in the State of Michigan and is one of the entities handling the BPW's coverage claim.

5.      Upon information and belief, Defendant Indian Harbor is a corporation, organized under the laws of the State of North Dakota, whose principal place of business is in the State of Connecticut. Upon information and belief, Indian Harbor regularly conducts business in the State of Michigan.

**Jurisdiction and Venue**

6.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §
1332 because there is complete diversity of citizenship between the Plaintiffs and the
Defendants, and the amount in controversy, exclusive of interests and costs, exceeds
$75,000.

7.      Venue is proper in this district under 28 U.S.C. § 1391 because a
substantial part of the events or omissions giving rise to this action occurred in this
district, in that the Plaintiff is a municipal entity in the State of Michigan, and each of the
parties conducts business in the Western District of the State of Michigan.

8.      There is an actual and justiciable controversy between the parties.

**Factual Background**

**A.      The Insurance Policy**

9.      Defendants sold the Policy to the BPW for the period of July 1,
2008 to July 1, 2009 with a retroactive date of July 1, 2000.  A true copy of the Policy is
attached hereto as **Exhibit A**.

10.      The Policy provides the following coverages that are relevant to this
dispute (terms in capital letters indicate they are defined in the Policy).  There is
coverage under Coverage A, B, or C, respectively; however, Coverage C expressly
involves the duty to defend a CLAIM:

> Coverage A – POLLUTION LEGAL LIABILITY
>
> The Company will pay on behalf of the INSURED for LOSS
> from POLLUTION CONDITIONS on, at, under or emanating
> from the location(s) stated in the Pollution Legal Liability
> Schedule, which the INSURED has or will become legally
> obligated to pay as a result of a CLAIM first made against
> the INSURED during the POLICY PERIOD, provided that the
> INSURED reports the CLAIM to the Company, in writing,

during the POLICY PERIOD or, if applicable, the Automatic or Optional Extended Reporting Period.

Coverage B – REMEDIATION LEGAL LIABILITY

The Company will pay on behalf of the INSURED for REMEDIATION EXPENSE from POLLUTION CONDITIONS on, at, under or emanating from the location(s) stated in the Remediation Legal Liability Schedule where, during the POLICY PERIOD, a CLAIM is first made against the INSURED or POLLUTION CONDITIONS are first discovered; provided that the INSURED notifies the Company of the CLAIM or POLLUTION CONDITIONS, in writing, during the POLICY PERIOD, or, if applicable, the Automatic or Optional Extended Reporting Period.

**Coverage C – LEGAL DEFENSE EXPENSE**

The Company will pay on behalf of the INSURED for LEGAL DEFENSE EXPENSE **to defend a CLAIM for LOSS or for REMEDIATION EXPENSE** under Coverage A – POLLUTION LEGAL LIABILITY, Coverage B – REMEDIATION LEGAL LIABILITY or Coverage D – CONTINGENT TRANSPORTATION COVERAGE, to which this Policy applies.  The Company shall have the right and the duty to defend the INSURED against any CLAIM seeking damages for a LOSS, or for REMEDIATION EXPENSE. The Company will have no duty to defend the INSURED against any CLAIM for LOSS or for REMEDIATION EXPENSE to which this Policy does not apply.

Policy at 1-2 (emphasis added).

11.     The Policy defines LOSS to mean:

monetary judgment, award or settlement of compensatory damages arising from:

a.  BODILY INJURY; or

b.  PROPERTY DAMAGE

Policy at 3.

12.     The Policy defines BODILY INJURY to mean exactly the types of

injuries alleged by the Sierra Club:

physical injury, **sickness**, **disease**, mental anguish, emotional distress, shock or building related illness **sustained by any person**, including death resulting therefrom, **caused by POLLUTION CONDITIONS**.

Policy at 6 (emphasis added).

13.     The Policy defines CLAIM broadly to mean:

a demand, notice or assertion of a legal right alleging liability or responsibility on the part of the INSURED, arising out of POLLUTION CONDITIONS, and shall include but not necessarily be limited to lawsuits or petitions filed against the INSURED.

Policy at 3.

14.     The Policy defines POLLUTION CONDITIONS, in relevant part, to

mean:

the discharge, dispersal, release, seepage, migration, or escape of any solid, liquid, gaseous or thermal pollutant, irritant or contaminant, including but not limited to smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, hazardous materials, waste materials . . . into or upon land, or structures thereupon, the atmosphere, or any watercourse or body of water including groundwater.

Policy at 3.

15.     The Policy defines REMEDIATION EXPENSE to mean:

expenses incurred to investigate, remove, dispose of, treat or neutralize POLLUTION CONDITIONS, including any monitoring and testing costs associated with such investigation, removal, disposal, treatment or neutralization, and including REPLACEMENT COSTS, to the extent required by (1) Federal, State, Local or Provincial Laws, Regulations or Statutes, or any subsequent amendments thereof, enacted to address POLLUTION CONDITIONS, and/or (2) a legally executed state voluntary program governing the cleanup of POLLUTION CONDITIONS.

Policy at 4.

16.     The Policy does not define the term "damages."

17.     The BPW has paid all premiums for the Policy and has satisfied all relevant and applicable conditions precedent to obtaining coverage under the Policy.

**B.     The Sierra Club Action**

18.     On or about December 15, 2008, the Sierra Club, an incorporated, not-for-profit environmental organization, filed the Sierra Club Action in the United States District Court for the Western District of Michigan alleging, among other things, that the DeYoung Plant emitted air pollutants physically injuring persons and causing other damage.  The Sierra Club Action also seeks disgorgement of profits and payments by the BPW of the Sierra Club's costs in bringing the action.  In addition, the Sierra Club Action also alleges that the BPW had failed to comply with various federal and state environmental laws and regulations and sought injunctive relief.  A true copy of the Sierra Club's Complaint is attached hereto as **Exhibit B**.

19.     The Sierra Club amended its Complaint on or about March 10, 2009.  A true copy of the Amended Complaint filed in the Sierra Club Action ("Amended Complaint") is attached hereto as **Exhibit C.**

20.     The Amended Complaint alleges, among other things, that:

> The DeYoung Plant is a coal- and natural gas-fired power
> plant that emits thousands of tons of carbon dioxide,
> nitrogen oxides and sulfur oxides every year as well as
> significant amounts of particulate matter, carbon monoxide,
> mercury, and other hazardous air pollutants.  Those
> pollutants contribute to climate change, respiratory distress,
> cardiovascular disease, and premature mortality. Nitrogen
> oxides and sulfur oxides in the air also contribute to acid
> rain, which sterilizes lakes and damages property.  Presence
> of those pollutants in the atmosphere is associated with
> increased hospital admissions and emergency room visits.

Amended Complaint at paragraph 3.

21.     The Amended Complaint alleges, among other things, that

"various pollutants have been, and continue to be, released into the atmosphere, aggravating air pollution locally and far downwind from the plant."

Amended Complaint at paragraph 5.

22.    The Amended Complaint alleges, among other things, that:

"Sierra Club has members who live, work, and recreate in the City of Holland and Ottawa County, Michigan, as well as other areas downwind from the De Young Plant. These members are negatively impacted by air pollution emissions from the De Young Plant. The health and welfare of Sierra Club's members, as well as their enjoyment of outdoor activities, has been and continues to be harmed by air pollution from the De Young Plant."

Amended Complaint at paragraph 14.

23.    The Amended Complaint, in its prayer for relief and among things, seeks relief to

"reduce pollution in the immediate vicinity of the DeYoung plant, where Sierra Club's members work, live, and recreate and, therefore, improve the air quality that is harming Sierra Club's members" and for "any other relief that the Court finds it just and equitable."

Amended Complaint at Prayer for Relief.

24.    Similar to the initial Complaint, the Amended Complaint also seeks, among other things, remedial expenses, damages because of alleged pollution conditions, an order requiring the BPW to "install the necessary pollution controls," costs, and disgorgement of profits (disgorgement was not requested initially).

25.    The claims set forth in the Complaint and Amended Complaint are related to events that are alleged to have taken place during the policy period of the Policy.

26.    The BPW gave Defendants timely notice of the Sierra Club Action and requested that Defendants defend the BPW.

27.     On or about February 11, 2009, Defendants denied coverage for the Sierra Club Action because, they argued, the matter "does not involve a third-party claim for 'loss' or a claim for 'remediation expense.'"  Consistent with this mischaracterization of the Sierra Club Action, Defendants then claimed that the Policy "does not apply to 'loss, remediation expense, legal defense, or any other coverage…arising out of civil, administrative or criminal fines or penalties, assessments, punitive, exemplary or multiplied damages.'"  Defendants also ignored certain relief requested and argued that the Sierra Club claims for "declaratory relief and injunctive relief do not trigger coverage under the subject policy."  A true copy of Defendants' denial letter is attached hereto as **Exhibit D.**  Upon information and belief, Defendants' denial of coverage was not based upon a thorough or proper investigation of the claim, but rather was undertaken as a result of, among other things, Defendants placing their own interests before those of their policyholder.

28.     The BPW, through its insurance broker HUB International, responded to XL's improper denial of coverage in a letter dated December 7, 2010, stating:

> [C]overage is triggered [because] [n]ot only does the complaint seek civil penalties, declaratory and injunctive relief, it also seeks associated costs and fees which trigger coverage on the policy. Sierra Club's costs and fees are compensatory damages, a loss as defined in the policy. The emitting of carbon dioxide, nitrogen oxides, sulfur oxides, carbon monoxide, and mercury into the atmosphere meet POLLUTION CONDITIONS as defined. The filed Complaint is an assertion of the legal right alleging responsibility on the Insured arising out of pollution conditions meeting the CLAIM definition.

A true copy of this letter is attached as **Exhibit E.**

29.     Despite substantial revisions and a request for disgorgement in the Amended Complaint, upon information and belief, Defendants undertook no further investigation.  They merely reiterated their denial of coverage without any further analysis in a letter dated November 20, 2009, stating, "Based on our review of the amended complaint, our February 11, 2009 denial of covered remains unaltered."  A true copy of this letter is attached as **Exhibit F.**

30.     The BPW, through its insurance broker HUB International, responded to the denial of claim on April 1, 2011, stating that the denial of coverage is "completely without merit," and that coverage clearly existed here under the "Coverage C - Legal Defense Expense" and "Insuring Agreement Coverage C – Legal Defense Expense" provisions of the Policy.  The BPW also explained that all of the necessary elements of coverage existed, i.e., "a CLAIM for LOSS or for REMEDIATION EXPENSE" (emphasis added), and stated that it had:

> been served with a lawsuit alleging responsibility (as per the Policy definition of CLAIM) for releasing contaminants into the atmosphere (as per the Policy definition of POLLUTION CONDITIONS) accompanied by a demand that the insured remedy, mitigate violations as required by Federal law (as per the Policy Definition of REMEDIATION EXPENSE) [and had been] served with a lawsuit alleging responsibility for Sierra Club member's health being harmed (as per Policy Definition of BODILY INJURY) by releasing contaminants into the atmosphere (as per definition of POLLUTION CONDITIONS) with a demand that the Court order the defendant to disgorge profits (as per Policy definition of LOSS – including Monetary Judgment).

A true copy of this notice is attached as **Exhibit G.**

31.     The Defendants failed to accept or deny coverage in response to this letter.

## Count I
**(Breach of Contract)**

32.     The BPW repeats and realleges each and every allegation contained in the foregoing paragraphs.

33.     The BPW has been forced to retain its own special counsel, and has incurred and will continue to incur substantial costs in defending itself against the Sierra Club Action.

34.     The fees and expenses incurred and paid by the BPW to defend the Sierra Club action exceed $2,000,000.00.

35.     Defendants have not paid the costs incurred and paid by the BPW in connection with the defense of the Sierra Club Action.

36.     Defendants have breached the Policy by, among other things, failing to pay costs incurred and paid by the BPW in connection with the defense of the Sierra Club Action.  Defendants also have breached the Policy by refusing to pay the costs incurred by the BPW going forward in connection with the defense of the Sierra Club Action and improperly investigating and otherwise handling the claim.  Defendants' failure, refusal, and other improper conduct have foreseeably prejudiced the BPW by, among other things, withholding necessary resources and diverting attention to this coverage dispute.  Instead of the peace of mind that was intended to be purchased, the Sierra Club Action has given rise to additional coverage litigation.  This is not how insurance is intended to function.

37.     Defendants' actions, in breach of the Policy, have required the BPW to fend for itself in the Sierra Club Action.

38.     In addition to any direct, consequential, and exemplary damages arising out of breach of contract, the failure to defend and properly investigate and otherwise handle the claims against the BPW, and as a direct and proximate result of Defendants' other acts and omissions, the BPW is entitled to recover its attorneys' fees incurred in this action in equity and pursuant to applicable law, as well as any pre- or post-judgment interest.

### Count II
### (Declaratory Judgment)
### Defense and Investigation

39.     The BPW repeats and realleges each and every allegation contained in the foregoing paragraphs.

40.     Defendants contend that "[t]his matter does not involve a third-party claim for 'LOSS' or a CLAIM for 'REMEDIATION EXPENSE,' as those terms are defined by the policy." *See* Coverage C quoted above.

41.     The BPW has been forced to retain its own special counsel, and has incurred, and will continue to incur, costs and expenses in defending itself against the Sierra Club Action.

42.     The fees and expenses incurred by the BPW exceed $2,000,000.00.

43.     Defendants are expressly obligated under the Policy, particularly its Coverage C, to defend the BPW against the Sierra Club Action and to promptly reimburse the BPW for all covered costs that it has incurred defending against such action.

44.     Defendants have breached the Policy by, among other things, refusing to pay the costs incurred by the BPW in connection with the defense of the Sierra Club Action.

45.     By reason of the foregoing, an actual and justiciable controversy exists between the BPW and Defendants regarding Defendants' duty to defend against the claims asserted in the Sierra Club Action and Defendants' duties to pay the BPW's defense and investigation costs arising from the defense of the claims asserted in that action and to investigate and handle the BPW's claim properly.

46.     Moreover, by the Defendant's wrongful denial and related misconduct, Defendants have waived any ability they may have had to, among other things, select defense counsel, impose conditions or limitations on the fees or costs paid via extra-contractual litigation guidelines or otherwise, or to in any way challenge or dispute the defense costs paid by the BPW to date in defending the Sierra Club Action and in gathering information necessary to the investigation of the Sierra Club allegations in order to understand and minimize the alleged liability.  Among other things, such fees and costs presumptively are reasonable because they have been reviewed and paid by the BPW for its defense.  Plaintiff seeks an order requiring immediate reimbursement of all of its paid expenses and costs to defend the Sierra Club action.

47.     Defendants' actions have caused the BPW to defend itself, at its own cost, in the Sierra Club Action.

48.     In addition, the BPW is entitled to a judgment from the Court declaring that the Defendants have a duty to defend the BPW against the claims

asserted in the Sierra Club Action and to pay for the defense and investigation of such claims.

49.     In addition to any direct, consequential, and exemplary damages arising out of breach of contract, the failure to defend and properly investigate and otherwise handle the claims against the BPW, and as a direct and proximate result of Defendants' other acts and omissions, the BPW is entitled to recover its attorneys' fees incurred in this action in equity and pursuant to applicable law as well as any pre- or post-judgment interest.

### Count III
**(Declaratory Judgment)**
**Indemnification**

50.     The BPW repeats and realleges each and every allegation contained in the foregoing paragraphs.

51.     Defendants have disputed and likely will continue to dispute their obligations under the Policy to indemnify the BPW with respect to any liability for amounts that may be expended as a result of the Sierra Club Action.

52.     By reason of the foregoing, an actual and justiciable controversy exists between the BPW and Defendants regarding Defendants' obligation to indemnify the BPW in connection with the claims asserted in the Sierra Club Action.

53.     The BPW is entitled to a judgment declaring that the Defendants have a duty under the Policy to indemnify the BPW for its covered liability(ies) arising from the Sierra Club Action.

54.     In addition to any direct, consequential, and exemplary damages arising out of breach of contract, the failure to defend and properly investigate and otherwise handle the claims against the BPW, and as a direct and proximate result of

Defendants' other acts and omissions, the BPW is entitled to recover its attorneys' fees incurred in this action in equity and pursuant to applicable law as well as any pre- or post-judgment interest.

### JURY DEMAND

55.    The BPW requests a trial by jury on all issues so triable.

### Prayer for Relief

As of the date of this Complaint, the BPW has paid legal fees and costs in excess of $2 million in connection with the defense of the Sierra Club Action.

WHEREFORE, the BPW seeks:

a.  an order requiring immediate reimbursement by Defendants of all of the BPW's past defense costs as incurred and paid by the BPW to date plus pre-filing interest;

b.  an order declaring that Defendants are obligated to provide a defense to the BPW in connection with the Sierra Club action going forward and to reimburse the BPW's reasonable defense costs, as incurred;

c.  a judgment that BPW's defense costs are presumptively reasonable if and when paid by the BPW in its official capacity;

d.  a judgment awarding additional damages in an amount to be determined at trial for Defendants' failure to promptly pay the legal fees, and costs incurred and paid by the BPW in connection with the defense of the Sierra Club Action;

e.  a judgment declaring that Defendants are obligated to indemnify the BPW up to the limits set forth in the Policy for the BPW's covered liability(ies) arising from the Sierra Club Action;

f.   a judgment awarding pre- and post-judgment interest from the date of any payment by the BPW of amounts for which the Defendants are liable at an appropriate rate;

g.   a judgment awarding the BPW its attorneys' fees and costs incurred in this coverage action as a direct and foreseeable consequence of Defendants' misconduct and breach; and

h.   a judgment awarding such other and further relief as the Court finds to be just and proper.

CUNNINGHAM DALMAN, P.C.
Attorneys for Plaintiff

Date: November 10, 2011          By:  /s/ Andrew J. Mulder
                                      Andrew J. Mulder  P26280
                                      City Attorney


Date: November 10, 2011          By:  /s/ Ronald J. Vander Veen
                                      Ronald J. VanderVeen  P33067
                                      Deputy City Attorney
                                      P.O. Box 1767
                                      321 Settlers Road
                                      Holland, MI  49422-1767
                                      Telephone: (616)392-1821

Of Counsel:
John G. Nevius, Esq., P.E. (Pro Hac Vice – pending)
John M. O'Connor, Esq.
Carrie Maylor DiCanio, Esq. (Pro Hac Vice – pending)

ANDERSON KILL & OLICK, P.C.
1251 Avenue of the Americas
New York, New York 10020
Telephone:  212-278-1508