



COMPLAINT
EXHIBIT A

## INDIAN HARBOR INSURANCE COMPANY

**ADMINISTRATIVE OFFICE**
Seaview House
70 Seaview Avenue
Stamford, CT  06902-6040
(800) 688-1840

**HOME OFFICE**
CT Corporation System
314 East Thayer Avenue
Bismarck, ND 58501-4018
(800) 688-1840

### Pollution And Remediation Legal Liability Declarations

NOTICE: This insurance has been placed with an insurer that is not licensed by the State of Michigan.  In case of insolvency, payment of claims may not be guaranteed.

THIS IS A "CLAIMS-MADE AND REPORTED" POLICY.  THE POLICY REQUIRES THAT A CLAIM BE MADE UPON THE INSURED AND REPORTED TO THE COMPANY DURING THE POLICY PERIOD OR EXTENDED REPORTING PERIOD, IF ANY.  PLEASE READ CAREFULLY.

THIS POLICY CONTAINS PROVISIONS WHICH LIMIT THE AMOUNT OF LEGAL DEFENSE EXPENSE THE COMPANY IS RESPONSIBLE TO PAY IN CONNECTION WITH CLAIMS.  LEGAL DEFENSE EXPENSES SHALL BE APPLIED AGAINST ANY RETENTION AMOUNT AND ARE SUBJECT TO THE LIMIT OF LIABILITY STATED IN ITEM 3. BELOW.

Policy Number:          PEC000396608
Renewal of:             PEC000396607

1:   FIRST NAMED INSURED:       CITY OF HOLLAND BOARD OF PUBLIC WORKS
     Address:                   625 HASTINGS AVENUE
     City/State/Zip:            HOLLAND, MI 49423

2:   Policy Period:

     From        July 1, 2008      To      July 1, 2009
                 12:01 A.M. standard time at your mailing address shown above.

3:   COVERAGE A: POLLUTION LEGAL LIABILITY, COVERAGE B: REMEDIATION LEGAL LIABILITY, COVERAGE C: LEGAL DEFENSE EXPENSE, and COVERAGE D: CONTINGENT TRANSPORTATION COVERAGE.

     a.   Limit of Liability:        $20,000,000          each LOSS, REMEDIATION EXPENSE,
                                                          or LEGAL DEFENSE EXPENSE

IHIC-PARL5Dr (9/04)
© 2004, XL America, Inc.

E&S Copy

| | | |
|---|---|---|
| | $20,000,000 | Total for all LOSS, REMEDIATION EXPENSE, LEGAL DEFENSE EXPENSE or other coverages provided by endorsement |
| b. Self-Insured Retention Amount: | $250,000 | each LOSS, REMEDIATION EXPENSE or LEGAL DEFENSE EXPENSE |

4:  Retroactive Date(s)

Coverage A: POLLUTION LEGAL LIABILITY:      July 1, 2000

Coverage B: REMEDIATION LEGAL LIABILITY:     July 1, 2000

5:  Covered Location(s):

Coverage A: POLLUTION LEGAL LIABILITY:      See Endorsement # 001

Coverage B: REMEDIATION LEGAL LIABILITY:     See Endorsement # 001

6:   Policy Premium:                     $101,120.00   25% Minimum Earned
6a:  Premium For Certified Acts of Terrorism:   $2,945.00    (Included in Item 6 above)
6b:  Premium For Non-Certified Acts of Terrorism: ████████

7:   Endorsements Attached to this Policy

| Endorsement Number | Endorsement Form | Endorsement Title |
|---|---|---|
| | PN CW 02 05 05 | Notice To Policyholders - Privacy Policy |
| | PN CW 05 01 06 | Notice To Policyholders - U.S. Treasury Department's Office Of Foreign Assets Control ("OFAC") |
| | PN105 12 07 T | Policyholder Disclosure Notice Of Terrorism Insurance Coverage |
| | PN368 1207 TR | Terrorism Notice To Policyholders (Certifed Acts Excluded, Other Acts Provided On Current Policy And Both Provided On Renewal) |
| | IHIC-PARL5CPR 09 04 | Pollution And Remediation Legal Liability Policy |
| Endorsement No. 001 | ENSTE702AR 09 04 | Pollution Legal Liability And Remediation Legal Liability Schedule |
| Endorsement No. 002 | IL MP 9104 0906 IHIC | In Witness Endorsement |
| Endorsement No. 003 | ENSTE705R 09 04 | Underground Storage Tank(s) And Associated Piping Schedule |
| Endorsement No. 004 | ENSTE706AR 09 04 | Restrictive Amendment Of Coverage B-Remediation Legal Liab. Off-Premises Coverage B Only-Except For Scheduled ASTs & Assoc. Piping And/Or Scheduled USTs |
| Endorsement No. 005 | ENSTE711A 09 02 | Retroactive Date(s) - Blanket Endorsement |
| Endorsement No. 006 | ENSTE783 09 02 | Pollution Products For Water Supply And Biosolids - Derived Fertilizer Material Endorsement |
| Endorsement No. 007 | ENSTE784R 09 04 | Pollution Coverage - Specific Owned/Leased Vehicles |
| Endorsement No. 008 | ENSTE797B 09 02 | Extra Expense Endorsement |
| Endorsement No. 009 | ENSTE838 09 02 | In-Ground Treatment Process Tanks Coverage Endorsement |
| Endorsement No. 010 | ENSTE840 09 02 | Location(s) Specific Endorsement |
| Endorsement No. 011 | ENSTE852R 09 04 | Mold Matter Exclusion |
| Endorsement No. 012 | ENSTE853BR 09 04 | Minimum Earned Premium Endorsement |
| Endorsement No. 013 | ENSTE854AR 06 07 | Material Change In Use |
| Endorsement No. 014 | ENSTE899 (12/07) | Coverage For Certified Acts Of Terrorism, Subject To Cap And Coverage For Other Acts Of Terrorism |

IHIC-PARL5Dr (9/04)
©, 2004, XL America, Inc.

E&S Copy

| Endorsement Number | Endorsement Form | Endorsement Title |
|---|---|---|
| Endorsement No. 015 | XL-MISOP 02 07 | Michigan Service Of Process |

**Broker Name:** Hub International Midwest Limited
**Address:** 7200 Eagle Crest Blvd.
**City/State/Zip:** Evansville, IN 47715

_(signature)_

(Authorized Representative)

GBON       08/07/2008
KSIM       0005016968

IHIC-PARL5Dr (9/04)
©, 2004, XL America, Inc.

E&S Copy

ENDORSEMENT #001

This endorsement, effective 12:01 a.m., July 1, 2008 forms a part of Policy No. PEC000396608 issued to CITY OF HOLLAND BOARD OF PUBLIC WORKS by Indian Harbor Insurance Company.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**POLLUTION LEGAL LIABILITY AND REMEDIATION LEGAL LIABILITY SCHEDULE**

This endorsement modifies insurance provided under the following:

POLLUTION AND REMEDIATION LEGAL LIABILITY POLICY

In consideration of the indicated adjustment of premium, the INSURED and the Company agree to the following Policy change(s):

Premium (increase/reduction):  $0

Section I., INSURING AGREEMENT, A. Coverage A - POLLUTION LEGAL LIABILITY and COVERAGE B - REMEDIATION LEGAL LIABILITY apply to the location(s) listed below, but solely as respects liability of the INSURED:

Location(s) owned, leased or operated by the INSURED:

000          ALL LOCATIONS LISTED ON THE CITY OF
             HOLLAND BOARD OF PUBLIC WORKS
             FACILITY INFORMATION AND ON FILE
             WITH XL ENVIRONMENTAL

All other terms and conditions remain the same.

ENSTE702ar (9/04)
©, 2004, XL America, Inc.
KSIM  08/07/2008

**E&S Copy**

# IN WITNESS ENDORSEMENT

INDIAN HARBOR INSURANCE COMPANY
ADMINISTRATIVE OFFICE.   SEAVIEW HOUSE
70 SEAVIEW AVENUE
STAMFORD, CT 06902-6040
STATUTORY HOME OFFICE.   CT CORPORATION SYSTEMS
314 EAST THAYER AVENUE
BISMARCK, ND  58501-4018

It is hereby agreed and understood that the following In Witness Clause supercedes any and all other In Witness clauses in this policy.

All other provisions remain unchanged.

IN WITNESS WHEREOF, the Company has caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by a duly authorized representative of the Company.

Dennis P. Kane
President

Kenneth P. Meagher
Secretary

IL MP 9104 0906 IHIC
KSIM  08/07/2008

E&S Copy

# INDIAN HARBOR INSURANCE COMPANY
## STAMFORD, CONNECTICUT
(A Stock Insurance Company Herein Called the Company)

## POLLUTION AND REMEDIATION LEGAL LIABILITY POLICY

**THIS IS A "CLAIMS-MADE AND REPORTED" POLICY. THE POLICY REQUIRES THAT A CLAIM BE MADE UPON THE INSURED AND REPORTED TO THE COMPANY DURING THE POLICY PERIOD OR EXTENDED REPORTING PERIOD, IF ANY. IN ADDITION, THIS POLICY MAY HAVE PROVISIONS OR REQUIREMENTS DIFFERENT FROM OTHER POLICIES YOU MAY HAVE PURCHASED. PLEASE READ CAREFULLY.**

**THIS POLICY CONTAINS PROVISIONS WHICH LIMIT THE AMOUNT OF LEGAL DEFENSE EXPENSE THE COMPANY IS RESPONSIBLE TO PAY IN CONNECTION WITH CLAIMS. LEGAL DEFENSE EXPENSE SHALL BE APPLIED AGAINST ANY RETENTION AMOUNT AND IS SUBJECT TO THE LIMITS OF LIABILITY STATED IN ITEM 3.A. OF THE DECLARATIONS.**

In consideration of the payment of the Policy Premium stated in Item 6. of the Declarations and in reliance upon the statements contained in the Application and any other supplemental materials and information submitted herewith, and subject to all the terms and conditions of this Policy, and the Limits of Liability and Retention Amount(s) stated in the Declarations, the Company agrees with the INSURED as follows:

### I. INSURING AGREEMENT

**A.**     **Coverage A - POLLUTION LEGAL LIABILITY**

The Company will pay on behalf of the INSURED for LOSS from POLLUTION CONDITIONS on, at, under or emanating from the location(s) stated in the Pollution Legal Liability Schedule, which the INSURED has or will become legally obligated to pay as a result of a CLAIM first made against the INSURED during the POLICY PERIOD, provided that the INSURED reports the CLAIM to the Company, in writing, during the POLICY PERIOD or, if applicable, the Automatic or Optional Extended Reporting Period.

**B.**     **Coverage B - REMEDIATION LEGAL LIABILITY**

The Company will pay on behalf of the INSURED for REMEDIATION EXPENSE from POLLUTION CONDITIONS on, at, under or emanating from the location(s) stated in the Remediation Legal Liability Schedule where, during the POLICY PERIOD, a CLAIM is first made against the INSURED or POLLUTION CONDITIONS are first discovered; provided that the INSURED notifies the Company of the CLAIM or POLLUTION CONDITIONS, in writing, during the POLICY PERIOD, or, if applicable, the Automatic or Optional Extended Reporting Period.

C.     **Coverage C - LEGAL DEFENSE EXPENSE**

The Company will pay on behalf of the INSURED for LEGAL DEFENSE EXPENSE to defend a CLAIM for LOSS or for REMEDIATION EXPENSE under Coverage A – POLLUTION LEGAL LIABILITY, Coverage B – REMEDIATION LEGAL LIABILITY or Coverage D – CONTINGENT TRANSPORTATION COVERAGE, to which this Policy applies.  The Company shall have the right and the duty to defend the INSURED against any CLAIM seeking damages for a LOSS, or for REMEDIATION EXPENSE.  The Company will have no duty to defend the INSURED against any CLAIM for LOSS or for REMEDIATION EXPENSE to which this Policy does not apply.

D.     **Coverage D - CONTINGENT TRANSPORTATION COVERAGE**

The Company will pay on behalf of the INSURED for LOSS or REMEDIATION EXPENSE as a result of a CLAIM first made against the INSURED during the POLICY PERIOD and reported to the Company, in writing, during the POLICY PERIOD or, if applicable, the Automatic or Optional Extended Reporting Period, from POLLUTION CONDITIONS arising from the INSURED's product or waste during the course of TRANSPORTATION by a CARRIER during the POLICY PERIOD.

## II. DEFINITIONS

A.     **AUTOMOBILE** means a land motor vehicle, trailer, semi-trailer, MOBILE EQUIPMENT, or off-road motor vehicle, including any machinery or apparatus attached thereto.  As used in this definition, MOBILE EQUIPMENT means any of the following types of land vehicles, including any attached machinery or equipment:

1.     bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;
2.     vehicles maintained for use solely on premises owned or rented by the INSURED;
3.     vehicles that travel on crawler treads;
4.     vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:
       (a)     power cranes, shovels, loaders or drills; or
       (b)     road construction or resurfacing equipment such as graders, scrapers or rollers,
5.     vehicles not described in (1), (2), (3) or (4) above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:
       (a)     air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment, or
       (b)     cherry pickers and similar devices used to raise or lower workers;
6.     vehicles not described in (1), (2), (3), (4) or (5) above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not MOBILE EQUIPMENT:

       (a)     Equipment designed primarily for:
               (i)     snow removal;
               (ii)    road maintenance, but not construction or resurfacing;
               (iii)   street cleaning;
       (b)     cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers, and
       (c)     air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

B.     **BODILY INJURY** means physical injury, sickness, disease, mental anguish, emotional distress, shock or building related illness sustained by any person, including death resulting therefrom, caused by POLLUTION CONDITIONS.

E&S Copy

C.  **CARRIER** means a person or entity, other than the INSURED or any subsidiary or affiliate company of the INSURED, engaged by or on behalf of the INSURED, and in the business of transporting property for hire by AUTOMOBILE, WATERCRAFT or rolling stock.

D.  **CLAIM(S)** means a demand, notice or assertion of a legal right alleging liability or responsibility on the part of the INSURED, arising out of POLLUTION CONDITIONS, and shall include but not necessarily be limited to lawsuits or petitions filed against the INSURED.

E.  **FIRST NAMED INSURED** means the person or entity stated in Item 1. of the Declarations.

F.  **INSURED** means the FIRST NAMED INSURED, any Additional INSURED and any Additional Named INSURED endorsed onto the Policy, and any present or former director, officer, partner, employee, LEASED WORKER or TEMPORARY WORKER thereof while acting within the scope of his/her duties as such.

G.  **INSURED CONTRACT(S)** means contract(s) designated in the INSURED CONTRACT(S) Schedule.

H.  **LEASED WORKER** means a person leased to the INSURED by a labor leasing firm under an agreement between the INSURED and the labor leasing firm, to perform duties related to the conduct of the INSURED's business.  LEASED WORKER does not include TEMPORARY WORKER.

I.  **LEGAL DEFENSE EXPENSE** means legal costs, charges and expenses incurred in the investigation, adjustment or defense of CLAIMS, or in connection with the payment of any REMEDIATION EXPENSE, and shall include any necessary expert fees paid to experts retained by defense counsel.

LEGAL DEFENSE EXPENSE does not include salary charges of regular employees or officials of the Company, fees and expenses of supervisory counsel retained by the Company, or the time and expense incurred by the INSURED in assisting in the investigation or resolution  of a CLAIM or in connection with REMEDIATION EXPENSE, including but not limited to the costs of the INSURED's in-house counsel.

J.  **LOSS** means monetary judgment, award or settlement of compensatory damages arising from:

a.  BODILY INJURY; or
b.  PROPERTY DAMAGE

K.  **LOW-LEVEL RADIOACTIVE WASTE AND MATERIAL** means waste or material that contains radioactivity and is not classified as high-level waste or material, transuranic waste or spent nuclear fuel. LOW-LEVEL RADIOACTIVE WASTE AND MATERIAL includes 1) test specimens of fissionable material irradiated for research and development only, and not for production of power or plutonium, provided the concentration of transuranic waste is less than 100 nCi/g; and  (2) mixed waste containing both radioactive and hazardous components as defined by the Atomic Energy Act and the Resource Conservation and Recovery Act.

L.  **POLICY PERIOD** means the period stated in Item 2. of the Declarations, or any shorter period arising as a result of cancellation.

M.  **POLLUTION CONDITIONS** means the discharge, dispersal, release, seepage, migration, or escape of any solid, liquid, gaseous or thermal pollutant, irritant or contaminant, including but not limited to smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, hazardous materials, waste materials, including medical, infectious and pathological wastes, electromagnetic fields, and LOW LEVEL RADIOACTIVE WASTE AND MATERIAL, into or upon land, or structures thereupon, the atmosphere, or any watercourse or body of water including groundwater.

**N.** **PROPERTY DAMAGE** means:

1. physical injury to or destruction of tangible property, including the resulting loss of use thereof, and including the personal property of third parties; or
2. loss of use of such property that has not been physically injured or destroyed; or
3. diminished third party property value

provided that such physical injury or destruction, loss of use, and diminished third party property value are caused by POLLUTION CONDITIONS. PROPERTY DAMAGE does not include REMEDIATION EXPENSE.

**O.** **REMEDIATION EXPENSE** means expenses incurred to investigate, remove, dispose of, treat or neutralize POLLUTION CONDITIONS, including any monitoring and testing costs associated with such investigation, removal, disposal, treatment or neutralization, and including REPLACEMENT COSTS, to the extent required by (1) Federal, State, Local or Provincial Laws, Regulations or Statutes, or any subsequent amendments thereof, enacted to address POLLUTION CONDITIONS, and/or (2) a legally executed state voluntary program governing the cleanup of POLLUTION CONDITIONS.

**P.** **TEMPORARY WORKER** means a person who is furnished to the INSURED to substitute for a permanent employee on leave or to meet seasonal or short-term workload conditions.

**Q.** **WATERCRAFT** means any vessel or other contrivance used or capable of being used as a means of transportation upon water, whether self-propelled or otherwise, including barges and tugs.

**R.** **REPLACEMENT COSTS** means costs necessarily incurred by the INSURED to repair or replace real or personal property damaged during the course of REMEDIATION EXPENSE in order to restore the property to the condition it was in prior to the REMEDIATION EXPENSE. These costs shall not exceed the actual cash value of such real or personal property prior to the REMEDIATION EXPENSE. For the purposes of this definition, actual cash value means replacement cost reduced by physical depreciation and obsolescence.

**S.** **TRANSPORTATION** means the movement by a CARRIER of the INSURED's product or waste generated by the INSURED, after a CARRIER leaves the location(s) stated in the Pollution Legal Liability or Remediation Legal Liability Schedule until the INSURED's waste or product is delivered or unloaded by the CARRIER.

## III. TERRITORY

This Policy only applies to CLAIMS made or brought in the United States, its territories or possessions or in Canada.

## IV. EXCLUSIONS

**This Insurance does not apply to LOSS, REMEDIATION EXPENSE, LEGAL DEFENSE EXPENSE or any other coverages afforded under this Policy or any endorsements attached thereto:**

1. **Known Condition(s)**
   arising from POLLUTION CONDITIONS existing prior to the inception of this Policy, and reported to any officer, director, partner, or employee responsible for environmental affairs of the INSURED, which were not disclosed in writing to the Company in the application or related materials prior to the inception of this Policy or prior to the location being endorsed onto this Policy. Only conditions described in the documents listed in the Known Condition(s) Document Schedule are disclosed to the Company.

2. **Multiplied Damages/Fines/Penalties**
   based upon or arising out of civil, administrative or criminal fines or penalties, assessments, punitive, exemplary or multiplied damages.

E&S Copy

3.  **Employer's Liability/Workers' Compensation**
    based upon or arising out of injury to:  (a) any employee, director, officer, partner, LEASED WORKER or TEMPORARY WORKER of the INSURED if such injury occurs during and in the course of said employment, or during the performance of duties related to the conduct of the INSURED's business, or arising out of any Workers' Compensation, unemployment compensation, unemployment compensation or disability benefits law or similar law; and (b) the spouse, child, parent, brother or sister of such employee, director, officer, partner, LEASED WORKER or TEMPORARY WORKER of the INSURED as a consequence of (a) above.

4.  **Contractual Liability**
    based upon or arising as a result of liability of others assumed by the INSURED under any contract or agreement unless the liability would exist in the absence of a contract or agreement.  This exclusion does not apply to liability of others assumed by the INSURED in INSURED CONTRACT(S), if any, stated in the INSURED CONTRACT(S) Schedule.

5.  **Insured's Property/Bailee Liability**
    with respect to PROPERTY DAMAGE only, to property owned, leased or operated by, or in the care, custody or control of the INSURED, even if such PROPERTY DAMAGE is incurred to avoid or mitigate LOSS or REMEDIATION EXPENSE which may be covered under this Policy.  This exclusion does not apply to REPLACEMENT COSTS.

6.  **Vehicles**
    based upon or arising out of the ownership, maintenance, use, operation, loading or unloading of any AUTOMOBILE, aircraft, WATERCRAFT, rolling stock or all other forms of transportation, including any cargo carried thereby, beyond the legal boundaries of location(s) owned, leased or operated by the INSURED and stated in either the Pollution Legal Liability Schedule or the Remediation Legal Liability Schedule.  This exclusion does not apply to Coverage D – Contingent Transportation Coverage.

7.  **Divested Property**
    based upon or arising from POLLUTION CONDITIONS on, at, under or emanating from the location(s) stated in either the Pollution Legal Liability Schedule or the Remediation Legal Liability Schedule, where the actual discharge, dispersal, release, seepage, migration or escape of POLLUTION CONDITIONS begins subsequent to the time such location(s) are sold, given away, or abandoned by the INSURED, or condemned.

8.  **Nuclear Hazard:**
    a.   based upon or arising from POLLUTION CONDITIONS
         (1)   with respect to which an INSURED under this Policy is also an INSURED under a nuclear energy liability Policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an INSURED under any such Policy but for its termination upon exhaustion of its limits of liability; or

         (2)   resulting from the HAZARDOUS PROPERTIES of NUCLEAR MATERIAL and with respect to which
               (a)   any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or
               (b)   the INSURED is, or had this Policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization; or

b.    based upon or arising from POLLUTION CONDITIONS resulting from the HAZARDOUS PROPERTIES of NUCLEAR MATERIAL, if
  (1)    the NUCLEAR MATERIAL
    (a)    is at any NUCLEAR FACILITY owned by, or operated by or on behalf of, an INSURED or
    (b)    has been discharged or dispersed therefrom; or
  (2)    the NUCLEAR MATERIAL is contained in SPENT FUEL or WASTE at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an INSURED; or
  (3)    the BODILY INJURY or PROPERTY DAMAGE arises out of the furnishing by an INSURED of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any NUCLEAR FACILITY, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion 8. b. (3) applies only to PROPERTY DAMAGE to such NUCLEAR FACILITY and any property thereat.

c.    As used in this exclusion:
  (1)    "HAZARDOUS PROPERTIES" includes radioactive, toxic or explosive properties;
  (2)    "NUCLEAR MATERIAL" means SOURCE MATERIAL, SPECIAL NUCLEAR MATERIAL or BYPRODUCT MATERIAL;
  (3)    "SOURCE MATERIAL", "SPECIAL NUCLEAR MATERIAL" and "BYPRODUCT MATERIAL" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;
  (4)    "SPENT FUEL" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a NUCLEAR REACTOR;
  (5)    "WASTE" means any waste material
    (a)    containing BYPRODUCT MATERIAL; and
    (b)    resulting from the operation by any person or organization of any NUCLEAR FACILITY included within the definition of NUCLEAR FACILITY under paragraph (6) (a) or (6) (b) thereof;
  (6)    "NUCLEAR FACILITY" means:
    (a)    any NUCLEAR REACTOR,
    (b)    any equipment or device designed or used for separating the isotopes of uranium or plutonium, processing or utilizing SPENT FUEL, or handling, processing or packaging WASTE,
    (c)    any equipment or device used for the processing, fabricating or alloying of SPECIAL NUCLEAR MATERIAL, if at any time the total amount of such material in the custody of the INSURED at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,
    (d)    any structure, basin, excavation, premises or place prepared or used for the storage or disposal of WASTE, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;
  (7)    "NUCLEAR REACTOR" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;
  (8)    "PROPERTY DAMAGE" includes all forms of radioactive contamination of property.

9. **Products Liability**
   based upon or arising out of goods or products manufactured, sold, handled, distributed, altered or repaired by the INSURED or by others trading under the INSURED's name including any container thereof, any failure to warn, or any reliance upon a representation or warranty made at any time with respect thereto, but only if the POLLUTION CONDITIONS occur away from the location(s) owned, operated, or leased by the INSURED and after physical possession of such has been relinquished to others.

10. **Intentional Acts**
    arising from POLLUTION CONDITIONS that result from intentional disregard of, or the deliberate, willful or dishonest non-compliance with any statute, regulation, ordinance, administrative complaint, notice letter or instruction by any governmental agency or representative on the part of any officer, director, partner, or employee responsible for environmental affairs of the INSURED.

11. **Hostile Acts**
    based upon or arising out of any consequence, whether direct or indirect, of war, invasion, act of foreign enemy, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection or military or usurped power.

12. **Lead Based Paint and Asbestos**
    based upon or arising out of the existence, required removal or abatement of lead based paint or asbestos, in any form, including but not limited to products containing asbestos, asbestos fibers, asbestos dust, and asbestos containing materials.

13. **Underground Storage Tank(s)**
    based upon or arising out of the existence of any underground storage tank(s) and associated piping. This exclusion does not apply to underground storage tank(s) or associated piping:

    (a) either closed, abandoned in place or removed, in accordance with all applicable federal, state, or provincial regulations, prior to the inception date of this Policy; or

    (b) listed in the Underground Storage Tank(s) and Associated Piping Schedule, if any; or

    (c) the existence of which is unknown by any officer, director, partner or employee responsible for environmental affairs of the INSURED.

14. **Natural Radioactive Material(s)**
    based upon or arising out of the existence, required removal or abatement of naturally occurring radioactive material(s), including but not limited to radon.

## V. EXTENDED REPORTING PERIOD

A. Automatic Extended Reporting Period

1. The FIRST NAMED INSURED shall be entitled to an Automatic Extended Reporting Period for no additional premium in the event of the termination of this insurance by cancellation or non-renewal. The Automatic Extended Reporting Period shall apply to CLAIMS first made against the INSURED during the sixty (60) days immediately following the effective date of such cancellation or non-renewal, but only by reason of POLLUTION CONDITIONS existing as of or prior to the applicable termination or expiration date and otherwise covered by this insurance. The Automatic Sixty (60) Day Extended Reporting Period does not apply where: (1) POLLUTION CONDITIONS are discovered subsequent to the applicable termination or expiration date; (2) the Policy is terminated for fraud or non-payment of premium; or (3) the INSURED has purchased other insurance to replace the insurance covered under the Policy.

IHIC-PARL5CPr (9/04)                                    Page 7
© 2004, XL America, Inc.
KSIM  08/07/2008

E&S Copy

2. It is further agreed that if a CLAIM is made against the INSURED during the POLICY PERIOD and reported to the Company, in writing, by the INSURED within sixty (60) days of the expiration date of this Policy, then the CLAIM shall be considered to have been reported to the Company on the last day of the POLICY PERIOD. This provision shall apply only where a new policy has been issued to the INSURED by the Company for a POLICY PERIOD which immediately follows this Policy.

B.   Optional Extended Reporting Period

The FIRST NAMED INSURED shall be entitled to purchase an Optional Extended Reporting Period upon cancellation or non-renewal of the Policy subject to the following terms and conditions:

For policy terms in effect less than three-hundred and sixty-five (365) days, the FIRST NAMED INSURED shall be entitled to purchase an Optional Extended Reporting Period upon payment of an additional premium of not more than 200% of the full Policy Premium stated in Item 6 of the Declarations.

For policy terms equal to or greater than three-hundred and sixty-five (365) days, the FIRST NAMED INSURED shall be entitled to purchase an Optional Extended Reporting Period upon payment of an additional premium of not more than 100% of the full Policy Premium stated in Item 6. of the Declarations. The Optional Extended Reporting Period shall be effective for three (3) consecutive three-hundred and sixty-five (365) day periods commencing immediately following the effective date of cancellation or non-renewal. The FIRST NAMED INSURED must elect to purchase this Optional Extended Reporting Period in writing within thirty (30) days from the cancellation or non-renewal of the Policy. The Automatic Extended Reporting Period of sixty (60) days will be merged into this period and is not in addition to this period. The Optional Extended Reporting Period shall apply to CLAIMS first made against the INSURED during the Optional Extended Reporting Period, but only by reason of POLLUTION CONDITIONS existing as of or prior to the date of cancellation or non-renewal of this Policy, and otherwise covered by this Policy. The Optional Extended Reporting Period does not apply where: (1) POLLUTION CONDITIONS are discovered subsequent to the applicable termination or expiration date; (2) the Policy is terminated for fraud or non-payment of premium; or (3) the INSURED has purchased other insurance to replace the insurance covered under the Policy. It is a condition precedent to the operation of the rights granted under this clause that payment of the appropriate premium shall be made not later than thirty (30) days after expiration in the case of non-renewal or prior to cancellation in the case of cancellation.

For purposes of this Section, the quotation of different terms and conditions by the Company shall not be construed as non-renewal.

## VI.  LIMIT OF LIABILITY AND RETENTION

A.   This Policy will pay 100% of all covered LOSS, REMEDIATION EXPENSE, LEGAL DEFENSE EXPENSE or any other coverages afforded by endorsement attached to this Policy in excess of the applicable Retention Amount stated in Item 3.b. of the Declarations and subject to the Limits of Liability stated in Item 3.a. of the Declarations and the other terms and conditions of this Policy.

B.   The Retention Amount is to be borne by the INSURED and is not to be insured unless the Company has expressed its prior consent in writing to the FIRST NAMED INSURED. All LOSS, REMEDIATION EXPENSE or LEGAL DEFENSE EXPENSE or any other coverages afforded by endorsement arising out of the same or related POLLUTION CONDITIONS at any one location shall be considered a single LOSS, REMEDIATION EXPENSE or LEGAL DEFENSE EXPENSE, or other coverage as specified. The applicable Limits of Liability and Retention Amount(s) stated in the Declarations shall apply.

C.   The Company's total liability for all LOSS, REMEDIATION EXPENSE or LEGAL DEFENSE EXPENSE or any other coverages afforded by endorsement during the POLICY PERIOD, Automatic Extended Reporting Period or Optional Extended Reporting Period, if applicable, shall not exceed the Limit of Liability stated in Item 3.a. of the Declarations.

**D.**     Noncumulation of Limits of Liability for Multiple CLAIMS That Are Reported in Different POLICY PERIODS. Any LOSS, REMEDIATION EXPENSE or LEGAL DEFENSE EXPENSE or other coverages afforded by endorsement incurred and reported to the Company, in writing, over more than one POLICY PERIOD, and resulting from the same or related POLLUTION CONDITIONS, shall be considered a single LOSS, REMEDIATION EXPENSE, or LEGAL DEFENSE EXPENSE, or other coverage as specified. The LOSS, REMEDIATION EXPENSE, or LEGAL DEFENSE EXPENSE or other coverages afforded by endorsement will be subject to the same Limits of Liability and Retention Amount(s) in effect at the time of the first reported LOSS, REMEDIATION EXPENSE, or LEGAL DEFENSE EXPENSE or other coverage as specified.

### VII.  REPORTING, DEFENSE, SETTLEMENT AND COOPERATION

**A.**     As a condition precedent to the coverage hereunder, in the event of BODILY INJURY, PROPERTY DAMAGE, POLLUTION CONDITIONS, or any CLAIM, written or oral notice containing particulars sufficient to identify the INSURED and also reasonable obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the INSURED to the Company or any of its authorized agents as soon as practicable. In the event of oral notice, the INSURED agrees to furnish a written report as soon as practicable.

**B.**     As a condition precedent to the coverage hereunder, if a CLAIM is made against the INSURED, the INSURED shall forward to the Company every demand, notice, summons, order or other process received by the INSURED or the INSURED's representative as soon as practicable.

**C.**     No costs, charges or expenses shall be incurred, nor payments made, obligations assumed or remediation commenced without the Company's consent which shall not be unreasonably withheld. This provision does not apply to costs incurred by the INSURED on an emergency basis, where any delay on the part of the INSURED would cause injury to persons or damage to property, or increase significantly the cost of responding to a CLAIM. The INSURED shall notify the Company immediately thereafter. The Company shall have the right to designate legal counsel for the investigation, adjustment and defense of CLAIMS. The Company shall consult with the INSURED in conjunction with the selection of counsel. The INSURED shall not admit liability or settle any CLAIM without the Company's consent. If the Company recommends a settlement of a CLAIM:

1.     for an amount within the Retention and the INSURED refuses such settlement, the Company shall not be liable for any LOSS, REMEDIATION EXPENSE, LEGAL DEFENSE EXPENSE or other coverages afforded by endorsement in excess of the Retention; or

2.     for a total amount in excess of the Retention and the INSURED refuses such settlement, the Company's liability for LOSS, REMEDIATION EXPENSE, LEGAL DEFENSE EXPENSE or other coverages afforded by endorsement shall be limited to that portion of the recommended settlement and the costs, charges and expenses as of the INSURED's refusal which exceed the Retention and fall within the Limit of Liability.

**D.**     The Company shall have the right and the duty to assume the investigation, adjustment or defense of any CLAIM. In case of the exercise of this right, the INSURED, on demand of the Company, shall promptly reimburse the Company for any element of LOSS, REMEDIATION EXPENSE, LEGAL DEFENSE EXPENSE or other coverages afforded by endorsement falling within the INSURED's Retention.

**E.**     The INSURED shall cooperate with the Company and upon the Company's request shall submit to examination and interrogation by a representative of the Company, under oath if required, and shall attend hearings, depositions and trials and shall assist in affecting settlement, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits, as well as in the investigation and/or defense, all without charge to the Company. The INSURED shall further cooperate with the Company and do whatever is necessary to secure and affect any rights of indemnity, contribution or apportionment which the INSURED may have.

## VIII.  TRANSFER OF LEGAL DEFENSE DUTIES

A.  If the Company believes that the Limit of Liability stated in Item 3.a. of the Declarations has been or soon will be exhausted in defending CLAIMS or that the Company has paid out or will soon pay out the Aggregate Limit of Liability stated in Item 3.a. of the Declarations, the Company will so notify the FIRST NAMED INSURED in writing as soon as possible.  The Company will advise that its duty to defend CLAIMS seeking damages subject to those limits has terminated, subject to payment of the limits, and that it will no longer handle the defense of any CLAIM for which notice is given after the date it sends out such notice.  The Company will take immediate and appropriate steps to transfer control of any existing defense prior to exhaustion of the limits to the FIRST NAMED INSURED.  The FIRST NAMED INSURED agrees to reimburse the Company for any costs which the Company bears in connection with the transfer of the defense.

B.  The Company will take appropriate steps necessary to defend the CLAIM during the transfer of the defense and avoid any unfavorable legal action provided that the FIRST NAMED INSURED cooperates in the transfer of the duties of the defense.

C.  The exhaustion of the applicable Limit of Liability by the payment of LOSS, REMEDIATION EXPENSE, LEGAL DEFENSE EXPENSE or other coverages afforded by endorsement will not be affected by the Company's failure to comply with any of the provisions of this section.

## IX.  CONDITIONS

A.  **INSPECTION AND AUDIT** -- The Company shall be permitted but not obligated to inspect, sample and monitor on a continuing basis the INSURED's property or operations and any scheduled location, at any time.  Neither the Company's right to make inspections, sample and monitor nor the actual undertaking thereof nor any report thereon shall constitute an undertaking, on behalf of the INSURED or others, to determine or warrant that property or operations are safe, healthful or conform to acceptable engineering practice or are in compliance with any law, rule or regulation.  Access for the inspection and audit will be coordinated through the broker or agent of the FIRST NAMED INSURED.

B.  **CANCELLATION** -- This Policy may be canceled by the FIRST NAMED INSURED by surrender thereof to the Company or any of its authorized agents or by mailing to the Company written notice stating when thereafter the cancellation shall be effective.  This Policy may be canceled by the Company by mailing to the FIRST NAMED INSURED at the address shown in this Policy, written notice stating when not less than sixty (60) days [ten (10) days for non-payment of premium] thereafter such cancellation shall be effective.  The mailing of notice as aforesaid shall be sufficient proof of notice.  The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the POLICY PERIOD.  Delivery of such written notice either by the FIRST NAMED INSURED or by the Company shall be equivalent to mailing.

If the FIRST NAMED INSURED cancels, earned premium shall be computed in accordance with the customary short rate table and procedure.  If the Company cancels, earned premium shall be computed pro rata.  Premium adjustment may be made either at the time cancellation is affected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

C.  **DECLARATIONS AND REPRESENTATIONS** -- By acceptance of this Policy, the INSURED agrees that the statements contained in the Declarations and any other supplemental materials and information submitted herewith are the INSURED's agreements and representations, that they shall be deemed material, that this Policy is issued in reliance upon the truth of such representations and that this Policy embodies all agreements existing between the INSURED and the Company or any of its agents relating to this insurance.

D.   **ACTION AGAINST COMPANY** -- No action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this Policy, nor until the amount of the INSURED's obligation to pay shall have been finally determined either by judgment against the INSURED after actual trial or by written agreement of the INSURED, the claimant and the Company.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this Policy to the extent of the insurance afforded by this Policy.  No person or organization shall have any right under this Policy to join the Company as a party to any action against the INSURED to determine the INSURED's liability, nor shall the Company be impleaded by the INSURED or his legal representative.  Bankruptcy or insolvency of the INSURED or of the INSURED's estate shall not relieve the Company of any of its obligations hereunder.

E.   **ASSIGNMENT** -- This Policy shall be void as to the assignee or transferee, if assigned or transferred without written consent of the Company.  Such written consent shall not be unreasonably withheld or delayed by the Company.

F.   **SUBROGATION** -- In the event of any payment under this Policy, the Company shall be subrogated to all the INSURED's rights of recovery against any person or organization and the INSURED shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights.  The INSURED shall do nothing to prejudice such rights.

G.   **CHANGES** -- Notice to any agent or knowledge possessed by any agent or by any other person shall not affect a waiver or a change in any part of this Policy or estop the Company from asserting any right under the terms of this Policy; nor shall the terms of this Policy be waived or changed, except by endorsement issued to form a part of this Policy.

H.   **SOLE AGENT** -- The FIRST NAMED INSURED stated in Item 1. of the Declarations shall act on behalf of all INSURED(s) for the payment or return of premium, receipt and acceptance of any endorsement issued to form a part of this Policy, giving and receiving notice of cancellation or non-renewal and the exercise of the rights provided in Section V. Extended Reporting Period, B. Optional Extended Reporting Period.

I.   **OTHER INSURANCE** -- Subject to Section VI., Limits of Liability and Retention, this insurance shall be in excess of the Retention Amount stated in the Declarations and any other valid and collectible insurance available to the INSURED, whether such other insurance is stated to be primary, pro rata, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over the limits of liability provided in this Policy.

J.   **HEADINGS** -- The descriptions in the headings of this Policy are solely for convenience and form no part of the Policy terms and conditions.

K.   **JURISDICTION AND VENUE** -- It is agreed that in the event of the failure of the Company to pay any amount claimed to be due hereunder, the Company and the INSURED will submit to the jurisdiction of the State of New York and will comply with all the requirements necessary to give such court jurisdiction. Nothing in this clause constitutes or should be understood to constitute a waiver of the Company's right to remove an action to a United States District Court.

L.   **CHOICE OF LAW** -- All matters arising hereunder including questions related to the validity, interpretation, performance and enforcement of this Policy shall be determined in accordance with the law and practice of the State of New York (notwithstanding New York's conflicts of law rules).

M.   **SEVERABILITY** -- Except with respect to Limits of Liability and any rights and duties assigned in this Policy to the FIRST NAMED INSURED, this insurance applies as if each INSURED were the only INSURED and separately to each INSURED against whom a CLAIM is made.

ENDORSEMENT #003

This endorsement, effective 12:01 a.m., July 1, 2008 forms a part of Policy No. PEC000396608 issued to CITY OF HOLLAND BOARD OF PUBLIC WORKS by Indian Harbor Insurance Company.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### UNDERGROUND STORAGE TANK(S) AND ASSOCIATED PIPING SCHEDULE

This endorsement modifies insurance provided under the following:

POLLUTION AND REMEDIATION LEGAL LIABILITY POLICY

In consideration of the indicated adjustment of premium, the INSURED and the Company agree to the following Policy change(s):

Premium (increase/reduction):  $ 0

Section IV., EXCLUSIONS, Exclusion 13., Underground Storage Tank(s), is amended by the addition of the following:

**13. Underground Storage Tank(s)**

    This exclusion does not apply to the Underground Storage Tank(s) and Associated Piping listed below:

    [   ]    All Underground Storage Tank(s) and Associated Piping on file with the Company as set forth in the following document(s):

| List Document(s) | Date of Document(s) |
|---|---|
| | |

or

| | | |
|---|---|---|
| [ X ] <u>Location(s)</u><br>48TH STREET (SUBSTATION)<br>HOLLAND, MI  49423 | <u>Size (gals.)</u><br>550 | <u>Contents</u><br>WASTE OIL |
| [ X ] <u>Location(s)</u><br>48TH STREET (SUBSTATION)<br>HOLLAND, MI  49423 | <u>Size (gals.)</u><br>550 | <u>Contents</u><br>WASTE OIL |

All other terms and conditions remain the same.

ENSTE705R (9/04)
©, 2004, XL America, Inc.
KSIM  08/07/2008

E&S Copy

## ENDORSEMENT #004

This endorsement, effective 12:01 a.m., July 1, 2008 forms a part of Policy No. PEC000396608 issued to CITY OF HOLLAND BOARD OF PUBLIC WORKS by Indian Harbor Insurance Company.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### RESTRICTIVE AMENDMENT OF COVERAGE B – REMEDIATION LEGAL LIABILITY
### OFF-PREMISES COVERAGE B ONLY - EXCEPT FOR SCHEDULED ASTs AND ASSOCIATED PIPING AND/OR SCHEDULED USTs AND ASSOCIATED PIPING AND LOADING/UNLOADING

This endorsement modifies insurance provided under the following:

POLLUTION AND REMEDIATION LEGAL LIABILITY POLICY

In consideration of the indicated adjustment of premium, the INSURED and the Company agree to the following Policy change(s):

Premium (increase/reduction):  $0

Section I., INSURING AGREEMENT, B. Coverage B - REMEDIATION LEGAL LIABILITY is deleted in its entirety and replaced with the following:

B.  Coverage B - REMEDIATION LEGAL LIABILITY

**OFF-PREMISES REMEDIATION LEGAL LIABILITY**
The Company will pay on behalf of the INSURED for REMEDIATION EXPENSE from POLLUTION CONDITIONS emanating from the location(s) stated in the Remediation Legal Liability Schedule where, during the POLICY PERIOD, a CLAIM is first made against the INSURED or POLLUTION CONDITIONS are first discovered; provided that the INSURED notifies the Company of the CLAIM or POLLUTION CONDITIONS, in writing, during the POLICY PERIOD, or, if applicable, the Automatic or Optional Extended Reporting Period.

**ON-PREMISES REMEDIATION LEGAL LIABILITY**
The Company will pay on behalf of the INSURED for REMEDIATION EXPENSE from POLLUTION CONDITIONS on, at, or under the location(s) listed below which result from a release of contents from any of the below scheduled aboveground storage tank(s) and associated piping or below scheduled underground storage tank(s) and associated piping, or the loading or unloading activities of AUTOMOBILE(S), WATERCRAFT or railcars at the location(s) listed below where, during the POLICY PERIOD, a CLAIM is first made against the INSURED or POLLUTION CONDITIONS are first discovered; provided that the INSURED notifies the Company of the CLAIM or POLLUTION CONDITIONS, in writing, during the POLICY PERIOD, or, if applicable, the Automatic or Optional Extended Reporting Period.

[ X ]   All Aboveground Storage Tank(s) and Associated Piping on file with the Company as set forth in the following document(s):

| List Document(s) | Date of Document(s) |
|---|---|
| All locations listed on the City of Holland Board of Public Works Facility Information and on file with XL Environmental | June 6, 2008 |

ENSTE706ar (9/04)                                Page 1
© 2004, XL America, Inc.
KSIM  08/07/2008

**E&S Copy**

**ENDORSEMENT #005**

This endorsement, effective 12:01 a.m., July 1, 2008 forms a part of Policy No. PEC000396608 issued to CITY OF HOLLAND BOARD OF PUBLIC WORKS by Indian Harbor Insurance Company.


THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**RETROACTIVE DATE(S) - BLANKET**

This endorsement modifies insurance provided under the following:


POLLUTION AND REMEDIATION LEGAL LIABILITY POLICY

In consideration of the indicated adjustment of premium, the INSURED and the Company agree to the following Policy change(s):

Premium (increase/reduction):  $0


This Policy does not apply to LOSS, REMEDIATION EXPENSE or LEGAL DEFENSE EXPENSE or any other coverages provided by endorsement arising from POLLUTION CONDITIONS existing prior to the Retroactive Date(s) as listed in Item 4. of the Declarations including any subsequent POLLUTION CONDITIONS resulting from POLLUTION CONDITIONS existing prior to that date.


All other terms and conditions remain the same.


ENSTE711a (9/02)
©, 2002, XL Environmental, Inc.
KSIM  08/07/2008

**E&S Copy**

## ENDORSEMENT #006

This endorsement, effective 12:01 a.m., July 1, 2008 forms a part of Policy No. PEC000396608 issued to CITY OF HOLLAND BOARD OF PUBLIC WORKS by Indian Harbor Insurance Company.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### POLLUTION PRODUCTS FOR WATER SUPPLY AND
### BIOSOLIDS-DERIVED FERTILIZER MATERIAL ENDORSEMENT

This endorsement modifies insurance provided under the following:

POLLUTION AND REMEDIATION LEGAL LIABILITY POLICY

Section IV., EXCLUSIONS, Exclusion 9., Products Liability, is deleted in its entirety and replaced with the following:

9.  **Products Liability**
based upon or arising out of goods or products manufactured, sold, handled, distributed, altered or repaired by the INSURED or by others trading under the INSURED's name including any container thereof, any failure to warn, or any reliance upon a representation or warranty made at any time with respect thereto, but only if the POLLUTION CONDITIONS occur away from the location(s) owned, operated, or leased by the INSURED and after physical possession of such has been relinquished to others.

However, this exclusion will not apply to CLAIMS arising from POLLUTION CONDITIONS caused by water or biosolids-derived fertilizer material that is distributed and/or supplied by the INSURED.

All other terms and conditions remain the same.

ENSTE783 (9/02)
©, 2002, XL Environmental, Inc.
KSIM  08/07/2008

**E&S Copy**

**ENDORSEMENT # 007**

This endorsement, effective 12:01 a.m., July 1, 2008 forms a part of Policy No. PEC000396608 issued to CITY OF HOLLAND BOARD OF PUBLIC WORKS by Indian Harbor Insurance Company.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**POLLUTION COVERAGE - SPECIFIC OWNED/LEASED VEHICLES**

This endorsement modifies insurance provided under the following:

POLLUTION AND REMEDIATION LEGAL LIABILITY POLICY

Section II. DEFINITIONS, C. CARRIER is amended to include the INSURED when operating the following vehicles owned or leased by the INSURED.

| LIST VEHICLES | LIST VEHICLE IDENTIFICATION NUMBERS |
|---|---|
| SEWER VAC TRUCK | 1FDTN80E5VVA42653 |

All other terms and conditions remain the same.

ENSTE784r (9/04)
© 2004, XL America, Inc.
KSIM  08/07/2008

**E&S Copy**

**ENDORSEMENT #008**

This endorsement, effective 12:01 a.m., July 1, 2008 forms a part of Policy No. PEC000396608 issued to CITY OF HOLLAND BOARD OF PUBLIC WORKS by Indian Harbor Insurance Company.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**EXTRA EXPENSE**

This endorsement modifies insurance provided under the following:

POLLUTION AND REMEDIATION LEGAL LIABILITY POLICY

In consideration of the indicated adjustment of premium, the INSURED and the Company agree to the following Policy change(s):

Premium (increase/reduction):  $0

I.         Section I., INSURING AGREEMENT, is amended by the addition of the following:

**EXTRA EXPENSE**

The Company pay on behalf of the INSURED for EXTRA EXPENSE, solely as a result of POLLUTION CONDITIONS on, at, under or emanating from any of the locations stated in the Pollution Legal Liability and/or Remediation Legal Liability Schedule.

II.        Section II., DEFINITIONS, is amended by the addition of the following but only as respects to the coverage provided by this endorsement:

**EXTRA EXPENSE** means necessary expenses incurred by the INSURED, over and above the INSURED's continuing normal operating expenses, during the PERIOD OF RESTORATION, that the INSURED would not have incurred had there been no POLLUTION CONDITIONS discovered at the locations stated in the Pollution Legal Liability and/or Remediation Legal Liability Schedule.  Any salvage value of property obtained for temporary use during the PERIOD OF RESTORATION, which remains after the resumption of normal operations by the INSURED, shall be deducted from EXTRA EXPENSE.

Subject to the terms and conditions of this Policy, the Company will pay no more for EXTRA EXPENSE than the percentage shown below times the Limit of Liability for EXTRA EXPENSE.  If the PERIOD OF RESTORATION is:

(1)        30 days or less, the Company will pay up to 40% of the applicable Limit of Liability

(2)        31 to 60 days, the Company will pay up to 80% of the applicable Limit of Liability

(3)        61 days or more, the percentage applied to the applicable Limit of Liability shall be 100%.

**PERIOD OF RESTORATION** means the period of time that begins with the date and time that the Company receives and records written notice of the necessary suspension of the INSURED's operations due to POLLUTION CONDITIONS on, at, under, or emanating from any of the locations stated in the Pollution Legal Liability and/or Remediation Legal Liability Schedule. The PERIOD OF RESTORATION ends when the location(s) stated in the Pollution Legal Liability Schedule and/or Remediation Legal Liability Schedule should be restored to operation with reasonable speed and quality or when business activities resume at a new permanent location.  The expiration date of this Policy will not reduce the PERIOD OF RESTORATION, nor shall any Automatic or Optional Extended Reporting Period extend it.

All other terms and conditions remain the same.

ENSTE797b (9/02)
© 2002, XL Environmental, Inc.
KSIM  08/07/2008

**E&S Copy**

**ENDORSEMENT #009**

This endorsement, effective 12:01 a.m., July 1, 2008 forms a part of Policy No. PEC000396608 issued to CITY OF HOLLAND BOARD OF PUBLIC WORKS by Indian Harbor Insurance Company.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**IN-GROUND TREATMENT PROCESS TANKS COVERAGE**

This endorsement modifies insurance provided under the following:

POLLUTION AND REMEDIATION LEGAL LIABILITY POLICY

Section IV., EXCLUSIONS, Exclusion 13., Underground Storage Tank(s), is amended by the addition of the following:

     (d)     All in-ground treatment process tanks open to the atmosphere.

All other terms and conditions remain the same.

ENSTE838 (9/02)
© 2004, XL America, Inc.

KSIM  08/07/2008

**E&S Copy**

**ENDORSEMENT #010**

This endorsement, effective 12:01 a.m., July 1, 2008 forms a part of Policy No. PEC000396608 issued to CITY OF HOLLAND BOARD OF PUBLIC WORKS by Indian Harbor Insurance Company.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**LOCATION(S) SPECIFIC ENDORSEMENT**

This endorsement modifies insurance provided under the following:

POLLUTION AND REMEDIATION LEGAL LIABILITY POLICY

It is agreed that the following listed endorsement(s) apply only to the following listed location(s):

| Endorsement Title | Endorsement Number | Location(s) |
|---|---|---|
| Rest. Amendment of Cov B- Remediation Legal Liab. Off- Premises Cov B Only - Except for Sched. Asts & Assoc. Piping And/Or Scheduled USTs | ENSTE702AR | Zeeland Township Landfill, 1130 56th Avenue, Zeeland, MI |

All other terms and conditions remain the same.

ENSTE840 (9/02)
© 2004, XL America, Inc.
KSIM  08/07/2008

Page 1

E&S Copy

**ENDORSEMENT #011**

This endorsement, effective 12:01 a.m., July 1, 2008 forms a part of Policy No. PEC000396608 issued to CITY OF HOLLAND BOARD OF PUBLIC WORKS by Indian Harbor Insurance Company.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**MOLD MATTER EXCLUSION**

This endorsement modifies insurance provided under the following:

POLLUTION AND REMEDIATION LEGAL LIABILITY POLICY

Section IV. EXCLUSIONS, is amended by the addition of the following:

MOLD MATTER

based upon or arising out of the existence, exposure to, required removal or abatement of MOLD MATTER, regardless of whether such MOLD MATTER ensues from any cause or condition on, at, under or emanating from or to the location(s) listed in the Pollution Legal Liability and/or Remediation Legal Liability Schedule, including but not limited to any such cause or condition involving the presence, discharge or infiltration of moisture, vapor, water or any other liquid, or any damage related thereto.

Section II. DEFINITIONS is amended by the addition of the following:

MOLD MATTER means mold, mildew or any type or form of fungus, including any mycotoxins, spores, or byproducts produced or released by fungi.

All other terms and conditions remain the same.

ENSTE852r (9/04)
©, 2004, XL America, Inc.
KSIM  08/07/2008

E&S Copy

ENDORSEMENT #012

This endorsement, effective 12:01 a.m., July 1, 2008 forms a part of Policy No. PEC000396608 issued to CITY OF HOLLAND BOARD OF PUBLIC WORKS by Indian Harbor Insurance Company.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### MINIMUM EARNED PREMIUM ENDORSEMENT

This endorsement modifies insurance provided under the following:

POLLUTION AND REMEDIATION LEGAL LIABILITY POLICY

It is agreed that Section IX. CONDITIONS, Item B. CANCELLATION, Paragraph 2 is deleted in its entirety and replaced as follows:

The premium for this Policy will be 25% minimum earned at the inception date of this Policy.  This means that the percentage of the premium stated above is fully earned by the Company at the inception date of the Policy, and the INSURED is not entitled to any return of the minimum earned premium upon cancellation by the INSURED.

If the premium is less than one hundred percent (100%) minimum earned, and the INSURED cancels the Policy, then the amount of premium returnable after the minimum premium earned is retained by the Company shall be computed in accordance with the customary short rate table and procedure.

If the Company cancels, then the amount of premium returnable to the INSURED shall be computed pro rata. Premium adjustment may be made either at the time cancellation is affected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

If a CLAIM is made against the INSURED, POLLUTION CONDITIONS are discovered or coverage is requested from the Company by the INSURED during the POLICY PERIOD, or Automatic or Optional Extended Reporting Period, if applicable, then the premium shall be considered one hundred percent (100%) minimum earned, and the INSURED is not entitled to any return of premium upon cancellation.

All other terms and conditions remain the same.

ENSTE853br (9/04)
©, 2004, XL America, Inc.
KSIM  08/07/2008

**E&S Copy**

**ENDORSEMENT #013**

This endorsement, effective 12:01 a.m., July 1, 2008 forms a part of Policy No. PEC000396608 issued to CITY OF HOLLAND BOARD OF PUBLIC WORKS by Indian Harbor Insurance Company.


THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

**MATERIAL CHANGE IN USE**

This endorsement modifies insurance provided under the following:


POLLUTION AND REMEDIATION LEGAL LIABILITY POLICY


It is agreed that Section IV., EXCLUSIONS is amended by the addition of the following:

**Material Change In Use**
based upon or arising out of a material change in use of, or a material change in operations at, a location listed in the Pollution Legal Liability and Remediation Legal Liability Schedule from that set forth by the INSURED in the application and related materials at the time of Policy inception date.


All other terms and conditions remain the same.


ENSTE854ar (06/07)
©, 2007, XL America, Inc.
KSIM  08/07/2008


**E&S Copy**

### ENDORSEMENT #014

This endorsement, effective 12:01 a.m., July 1, 2008 forms a part of Policy No. PEC000396608 issued to CITY OF HOLLAND BOARD OF PUBLIC WORKS by Indian Harbor Insurance Company.

### COVERAGE FOR CERTIFIED ACTS OF TERRORISM, SUBJECT TO CAP
### AND COVERAGE FOR OTHER ACTS OF TERRORISM

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

POLLUTION AND REMEDIATION LEGAL LIABILITY POLICY

A. Provided that coverage is otherwise afforded under this Policy, and subject to all of the terms and conditions of this Policy, coverage is afforded for the following:

  Terrorism

  Any LOSS, REMEDIATION EXPENSE or LEGAL DEFENSE EXPENSE or any other coverages provided by endorsement, or ANY INJURY OR DAMAGE, arising, directly or indirectly, out of a CERTIFIED ACT OF TERRORISM or an OTHER ACT OF TERRORISM.

B. The following DEFINITIONS are added:

  1. For the purposes of this endorsement, ANY INJURY OR DAMAGE means any injury or damage covered under any Coverage Part to which this endorsement is applicable and as may be defined in any applicable Coverage Part.

  2. CERTIFIED ACT OF TERRORISM means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, pursuant to the federal Terrorism Risk Insurance Act of 2002, as amended:

    a. to be an act that resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act of 2002, as amended;

    b. to be an act of terrorism;

    c. to be a violent act or an act that is dangerous to human life, property or infrastructure;

    d. to have resulted in damage:

      1) within the United States; or
      2) to an air carrier; to a United States flag vessel, regardless of where the loss occurs; or at the premises of a United States mission; and

    e. to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

  3. OTHER ACT OF TERRORISM means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be

ENSTE899 (12/07)        Page 1
© 2007, XL America, Inc.

Includes copyrighted material of Insurance Services Offices, Inc. with its permission.

KSIM  08/07/2008

**E&S Copy**

part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not certified as a terrorist act pursuant to the federal Terrorism Risk Insurance Act of 2002, as amended. However, OTHER ACT OF TERRORISM does not include acts of terrorism that fail to be certified losses solely because the act resulted in aggregate losses of $5 million or less. Multiple incidents of an OTHER ACT OF TERRORISM which occur within a (72) seventy two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

C.  With respect to any one or more CERTIFIED ACTS OF TERRORISM, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act of 2002, as amended, exceed $100 billion in a Program Year and the Company has met its insurer deductible under the Terrorism Risk Insurance Act of 2002, as amended, the Company shall not be liable for the payment of any portion of the amount of such losses that exceed $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Seceatary of Treasury.

D.  Section IV. EXCLUSIONS, Item 11. Hostile Acts is deleted and replaced by the following:

11.  Hostile Acts

based upon or arising out from any consequence, whether direct or indirect, of war, invasion, act of foreign enemy, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection or military or usurped power, strike, riot or civil commotion. This exclusion does not apply to terrorism, including any CERTIFIED ACT OF TERRORISM or OTHER ACT OF TERRORISM.

All other terms and conditions remain the same.

ENSTE899 (12/07)                          Page 2
© 2007, XL America, Inc.

KSIM  08/07/2008

Includes copyrighted material of Insurance Services Offices, Inc. with its permission.

**E&S Copy**

**ENDORSEMENT #015**

This endorsement, effective 12:01 a.m., July 1, 2008 forms a part of Policy No. PEC000396608 issued to CITY OF HOLLAND BOARD OF PUBLIC WORKS by Indian Harbor Insurance Company

**SERVICE OF PROCESS**

The Commissioner of Insurance of the State of Michigan is hereby designated the true and lawful attorney of the Company upon whom may be served all lawful process in any action, suit or proceeding arising out of this policy. The Company further designates:

> The Corporation Company
> 30600 Telegraph Road
> Bingham Farms, MI 48025

as its agent in Michigan to whom such process shall be forwarded by the Commissioner of Insurance.

For Illinois exposures, the Insurer further designates the Director of the Illinois Division of Insurance and his successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of an Illinois exposure and this contract of insurance.

All other terms and conditions of this policy remain unchanged.

---

(Authorized Representative)

XL-MISOP (02/07)
KSIM 08/07/2008